**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TIMMY JOHN WEBER,

       Petitioner,

vs.

RENEE BAKER, *et al.*,

       Respondents.

_____/

3:11-cv-0104-PMP-WGC

**ORDER**

      In this capital habeas corpus action, there is, before the court, a motion for stay and abeyance (ECF No. 40) filed by the petitioner, Timmy John Weber.  The court will grant that motion, and stay this action pending the conclusion of Weber's ongoing state-court habeas corpus proceedings.

      Weber's federal habeas corpus action is brought pursuant to 28 U.S.C. § 2254.  His convictions of seventeen felonies, including two first degree murders and sexual abuse of a minor, and his sentences, including a death sentence for one of the murders, result from events that occurred in Las Vegas in 2002.  *See Weber v. State,* 121 Nev. 554, 560-70, 119 P.3d 107, 112-19 (2005) (statement of facts in the Nevada Supreme Court's decision on Weber's direct appeal).

      On Weber's direct appeal, the Nevada Supreme Court affirmed his convictions and sentences.  *Weber v. State,* 121 Nev. 554, 119 P.3d 107 (2005).  Weber then unsuccessfully pursued a first state-court habeas corpus petition.  The Nevada Supreme Court affirmed the denial of relief in

that action, in an unpublished order, on July 20, 2010.  *See* Second Amended Petition for Writ of Habeas Corpus (ECF No. 37), pp. 8-10.

Weber then initiated this federal habeas corpus action, pro se, on February 11, 2011, and counsel was appointed for him (ECF Nos. 4, 6).  With counsel, Weber filed an amended habeas petition (ECF No. 17) on August 30, 2011, and a second amended habeas petition (ECF No. 37) on March 22, 2012.

Meanwhile, on September 22, 2011, Weber initiated a second state-court habeas action. *See* Motion for Stay and Abeyance (ECF No. 40), pp. 3, 13-14; Opposition to Motion for Stay and Abeyance (ECF No. 46), p. 2.

On May 2, 2012, in this federal action, Weber filed his motion for stay (ECF No. 40). In that motion, Weber requests that the court stay this case pending exhaustion of his unexhausted claims in state court in the ongoing second state-court habeas action.  *See* Motion for Stay and Abeyance, pp. 3, 13-14.  Respondents filed an opposition to that motion on May 25, 2012 (ECF No. 46).  Weber filed a reply in support of the motion on June 4, 2012 (ECF No. 48).

A federal court may not grant habeas corpus relief on a claim not exhausted in state court. 28 U.S.C. § 2254(b).  The exhaustion doctrine is based on the policy of federal-state comity, and is intended to allow state courts the initial opportunity to correct constitutional deprivations.  *See Picard v. Conner*, 404 U.S. 270, 275 (1971).  To exhaust a claim, a petitioner must fairly present the claim to the highest state court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

The second amended petition in this action is a "mixed petition,"meaning it contains both exhausted and unexhausted claims.  *See* Second Amended Petition for Writ of Habeas Corpus (ECF No. 37), pp. 13 (conceding that Claim 1 is only partially exhausted), 38 (conceding that Claim 2 is only partially exhausted), 79 (conceding that Claim 3 is unexhausted), 112 (conceding that Claim 4 is unexhausted), 114 (conceding that Claim 5 is unexhausted), 134  (conceding that

Claim 7 is only partially exhausted); 212 (conceding that Claim 21 is unexhausted), 215 (conceding

that Claim 22 is unexhausted), 219 (conceding that Claim 23 is only partially exhausted), 231

(conceding that Claim 24 is unexhausted), 234 (conceding that Claim 25 is unexhausted), 236

(conceding that Claim 26 is only partially exhausted), 263 (conceding that Claim 30 is unexhausted);

*see also* Respondents' Opposition to Motion for Stay and Abeyance (assuming, without discussion,

that Weber's second amended habeas petition is a mixed petition).

Weber requests that this action be stayed while he completes exhaustion of his claims in state

court.  He argues – correctly – that, if his mixed second amended petition is simply dismissed

without prejudice, he may face limitations issues when he later attempts to file a new federal petition

after completing the exhaustion of his claims in state court.  *See* 28 U.S.C. § 2244(d) (statute of

limitations); *Duncan v. Walker*, 533 U.S. 167 (2001) (pendency of federal habeas petition does not

toll limitations period); *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (regarding "protective

petitions").

In *Rhines v. Weber*, 544 U.S. 269 (2005), the United States Supreme Court circumscribed

the discretion of federal district courts to impose stays to facilitate habeas petitioners' exhaustion of

claims in state court.  The *Rhines* Court stated:

> [S]tay and abeyance should be available only in limited circumstances.  Because
> granting a stay effectively excuses a petitioner's failure to present his claims first to
> the state courts, stay and abeyance is only appropriate when the district court
> determines there was good cause for the petitioner's failure to exhaust his claims first
> in state court.  Moreover, even if a petitioner had good cause for that failure, the
> district court would abuse its discretion if it were to grant him a stay when his
> unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application
> for a writ of habeas corpus may be denied on the merits, notwithstanding the failure
> of the applicant to exhaust the remedies available in the courts of the State").
>
> *    *    *
>
> [I]t likely would be an abuse of discretion for a district court to deny a stay and to
> dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his
> unexhausted claims are potentially meritorious, and there is no indication that
> thepetitioner engaged in intentionally dilatory litigation tactics.  In such
> circumstances, the district court should stay, rather than dismiss, the mixed petition.

*Rhines*, 544 U.S. at 277-78.

3

*Rhines* does not state, or suggest, that every unexhausted claim in the petition must satisfy, individually, the "good cause" and "potentially meritorious" requirements before a stay is permitted. Indeed, the rationale for permitting a stay would apply with more force to a petition in which only one of the unexhausted claims meets the *Rhines* requirements, but is likely meritorious, than it would to a petition in which all the unexhausted claims meet the *Rhines* requirements, but none are more than potentially meritorious. The efficient approach is for the court to address the petitioner's motion for stay before reaching respondents' exhaustion arguments as to each individual claim. If a stay is warranted with respect to any single claim, the court need not conduct a claim-by-claim exhaustion analysis regarding the remaining claims. The court rejects respondents' argument to the contrary. *See* Opposition to Motion for Stay and Abeyance, pp. 10-11.

In Claim 2 of Weber's second amended petition, Weber asserts a substantial claim that his death sentence is in violation of the constitution because the assistance of his trial counsel was ineffective in that they were deficient in their investigation and presentation of a penalty-phase defense. Second Amended Petition for Writ of Habeas Corpus, pp. 38-78. More specifically, Weber alleges in Claim 2 that his trial counsel "did not conduct a constitutionally adequate investigation into Mr. Weber's mental health history, educational history, family history, medical history, employment history, criminal record, and personal health." *Id*. at 38. Weber sets forth, in support of that claim, a great deal of information regarding his background, apparently based upon evidence not presented to the jury in the penalty-phase of his trial. *See id*. at 41-76. Weber claims that this information would have been mitigating and, if it had been properly developed and presented to the jury, Weber could have received a sentence less harsh than the death penalty that was imposed.

In his motion for stay, Weber asserts that his counsel in his first state-court habeas action was also ineffective, in not investigating his background, in not presenting in that first state-court habeas action the information he now sets forth in Claim 2, and in not claiming that his trial counsel was ineffective for not developing and presenting that information at trial. Specifically, Weber argues:

> Joel Mann represented Mr. Weber in his initial-review collateral proceedings. A novice in post-conviction work – Mr. Weber was his first such case – Mann failed to perform such basic tasks as gathering school, medical and prison records; or police reports.
>
> *   *   *
>
> In fact, Mann's work consisted of little more than reviewing the file: he did not interview any potential witnesses and he only met with Mr. Weber once. *See* Ex. 5. Mann admitted that he did not speak to any members of Mr. Weber's family to develop a mitigation presentation, nor did he permit his investigator to do so. *See* Docket No. 37 at 264. Lacking basic family information, Mann could not, and, indeed, did not present much of the mitigation that is now presented in Claim Two of Mr. Weber's petition. *See* Docket No. 37 at 38-78.

Motion for Stay and Abeyance, pp. 7-8. Weber argues that this alleged ineffectiveness of his counsel in his first state-court habeas action constitutes good cause for his failure to exhaust the claim that is Claim 2 of his second amended petition. For legal support of this argument, Weber points to the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

In *Martinez*, the Supreme Court held, for the first time, that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 132 S.Ct. at 1320. While the *Martinez* decision did not deal directly with the issue of good cause for a failure to exhaust, its holding, with respect to the issue of good cause for a procedural default, concerns a similar issue, and is analogous and instructive.

The *Rhines* opinion does not go into detail as to what constitutes good cause for failure to exhaust, and the Ninth Circuit has provided no clear guidance on that question, beyond holding that the test is less stringent than an "extraordinary circumstances" standard. *See Jackson v. Roe,* 425 F.3d 654, 661-62 (9th Cir. 2005) (citing *NLRB v. Zeno Table Co.*, 610 F.2d 567, 569 (9th Cir. 1979)). Many district courts have concluded that the standard is more generous than the good-cause showing needed to excuse a procedural default. *See*, *e.g.*, *Rhines v. Weber*, 408 F.Supp.2d 844, 849

1   (D.S.D. 2005) (applying the Supreme Court's mandate on remand).  This view finds support in the

2   Supreme Court's opinion in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), where the Court

3   acknowledged that a petitioner's "reasonable confusion" about the timeliness of his federal petition

4   would generally constitute good cause for his failure to exhaust state remedies before filing his

5   federal petition.  *Pace*, 544 U.S. at 416-17.  In light of this caselaw, and especially in light of the

6   recent Supreme Court decision in *Martinez*, the court concludes that ineffective assistance of

7   counsel in initial-review collateral proceedings, in failing to raise a substantial claim of ineffective

8   assistance at trial, may establish cause for the failure to exhaust that claim.

9           Applying this conclusion in this case, the court notes, first, that, in Nevada, a claim of

10   ineffective assistance of trial counsel generally must be made, in the first instance, in a first state

11   habeas action.  *See Corbin v. State,* 111 Nev. 378, 381, 892 P.2d 580, 582 (1995) ("[T]his court has

12   consistently concluded that it will not entertain claims of ineffective assistance of counsel on direct

13   appeal.")  Further, the court agrees with Weber that, in light of *Martinez*, and the other caselaw cited

14   above, he has shown good cause, under *Rhines*, for his failure to exhaust the substantial ineffective

15   assistance of counsel claim that he sets forth as Claim 2 of his second amended petition.  The claim

16   in Claim 2 is at least potentially meritorious.  There is no indication that Weber has ever engaged in

17   intentionally dilatory litigation tactics.  Therefore, the requirements for a stay of this action pending

18   exhaustion of Weber's claims in state court, as set forth in *Rhines*, are satisfied.

19           The court will grant Weber's motion for stay and abeyance, and stay this action.  In

20   exercising its discretion to grant the stay, the court takes into account the effect of *Crump v. Warden*,

21   113 Nev. 292, 934 P.2d 247 (1997), under which, it appears, there is at least a possibility that the

22   Nevada courts may consider, on their merits, Weber's unexhausted claims, including the claim set

23   forth in Claim 2 of his second amended petition.

24           The court's intention is that this will be the last time that the court imposes a stay to facilitate

25   Weber's exhaustion of claims in state court.  Weber must exhaust *all* of his unexhausted claims in

26   state court during the stay imposed pursuant to this order.

1        **IT IS THEREFORE ORDERED** that petitioner's Motion for Stay and Abeyance

2   (ECF No. 40) is **GRANTED**.  This action is **STAYED** to allow petitioner to exhaust, in state court,

3   all his unexhausted claims for habeas corpus relief.

4        **IT IS FURTHER ORDERED** that, on or before **December 15, 2012**, petitioner shall file

5   and serve a status report, describing the status of his state-court proceedings.  Thereafter, during

6   the stay of this action, petitioner shall file such a status report every 6 months (on or before

7   June 15, 2013; December 15, 2013; etc.).  Respondents may, if necessary, file and serve a response

8   to any such status report within 15 days after its service.  If necessary, petitioner may reply within

9   15 days of service of the response.

10       **IT IS FURTHER ORDERED** that, following the conclusion of petitioner's state court

11  proceedings, petitioner shall, within **30 days**, make a motion to lift the stay.

12       **IT IS FURTHER ORDERED** that this action shall be subject to dismissal upon a motion

13  by respondents if petitioner does not comply with the time limits in this order, or if he otherwise

14  fails to proceed with diligence during the stay imposed pursuant to this order.

15

16       Dated this 12th day of October, 2012.

17

18                                               _____

19                                               UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

7